1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11    NICOMEDES D. VIRAY,                )    1:03-CV-5840 LJO JMD HC
                                         )
12              Petitioner,              )
                                         )    FINDINGS AND RECOMMENDATION
13        v.                             )    REGARDING PETITION FOR WRIT OF
                                         )    HABEAS CORPUS
14                                       )
      SCOTT RAWERS, Warden,              )
15                                       )
                Respondent.              )
16    _____)

17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19    pursuant to 28 U.S.C. § 2254.

20                                    **BACKGROUND**

21          Petitioner is currently in the custody of the California Department of Corrections pursuant to

22    a valid judgment of commitment.  (Answer, Ex. 1.)  Petitioner was convicted of second-degree

23    murder and use of a deadly weapon during the commission of the murder in 1982.  He was sentenced

24    to an indeterminate term of 15 years to life, plus one year for use of the deadly weapon.  (Id., Answer

      at 1.)

25          On March 30, 1999, Petitioner attended a parole hearing before the Board of Prison Terms.

26    The Board recommended his parole.  (Answer, Ex. 2.)  On September 14, 1999, the Decision

27    Review Committee of the Board of Prison Terms (hereinafter "DRC") disapproved the

28    recommendation to parole Petitioner.  (Answer, Ex. 3.)  Petitioner did not file an administrative

1  appeal.

2       On February 25, 2000, Petitioner filed a petition for writ of habeas corpus in the California

3  Supreme Court.  (Answer at 2.)  On December 20, 2000, the court summarily denied the petition.

4  (Answer, Ex. 6.)

5       Petitioner then filed a petition for writ of habeas corpus in the United States District Court,

6  Central District of California.  On November 6, 2001, the court dismissed the petition for failing to

7  identify the respondent.  (Answer at 2.)

8       On May 29, 2003, Petitioner filed the instant petition for writ of habeas corpus in the United

9  States District Court, Southern District of California.  On June 11, 2003, the court transferred the

10  petition to this Court.  On June 18, 2004, this Court granted Respondent's motion to dismiss the

11  petition as untimely.  The Ninth Circuit reversed and remanded.  The petition sets forth the following

12  four grounds for relief: 1) "illegal enforcement of the Governor's new no-parole mandate"; 2)

13  "BPT's sham 'disapproval' of Petitioner's parole grant abrogated procedural and substantive due

14  process"; 3) "The Governor's no-parole policy violates the due process, ex post facto, and separation

15  of powers clauses of the federal and California constitutions"; and 4) "BPT's constitutional

16  violations are prejudicial to Petitioner in the extreme and cannot be deemed harmless error."

17  (Petition at 6-9.)

18       On July 15, 2005, Respondent filed an answer to the petition.

19       On December 17, 2005, Petitioner filed a traverse to the answer.

20       On July 8, 2007, and again on July 19, 2007, Petitioner filed a notice of additional

21  authorities.

22       On May 27, 2008, Petitioner filed a notice of new state decision.

23  **FACTUAL BACKGROUND**

24       On September 14, 1999, the DRC disapproved the Board's previous recommendation that

25  Petitioner be paroled.  (Answer, Ex. 3.)  The reasons cited by the DRC for its disapproval were 1) the

26  fact that Petitioner carried out his crime in a callous manner, without regard for human suffering and

27  without sufficient motive; 2) the lack of evidence showing Petitioner's employment plans; 3) the fact

28  that alcohol played a significant role in the crime; and 4) the opposition from the San Diego County

1  District Attorney and National City Police Department based on Petitioner minimizing his role in the

2  crime and his ability to violently erupt.  (Answer, Ex. 3 at 2.)  Petitioner did not file an

3  administrative appeal challenging the decision of the DRC.

**DISCUSSION**

4

5  **I.  Jurisdiction**

6          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

7  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

8  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

9  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

10  Constitution.  In addition, Petitioner is confined in Avenal State Prison, which is located within the

11  jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction

12  over the action.

13          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

14  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

15  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

16  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996),

17  *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320

18  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition

19  was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

20  **II.  Legal Standard of Review**

21          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

22  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

23  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

24          The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

25  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

26  (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

27  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

28  application of, clearly established Federal law, as determined by the Supreme Court of the United

1   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

2   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

3   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

4       As a threshold matter, this Court must "first decide what constitutes 'clearly established

5   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

6   quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

7   must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

8   of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

9   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

10  the Supreme Court at the time the state court renders its decision." Id.

11      Finally, this Court must consider whether the state court's decision was "contrary to, or

12  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

13  quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

14  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

15  question of law or if the state court decides a case differently than [the] Court has on a set of

16  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

17  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

18  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

19  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

20      "[A] federal court may not issue the writ simply because the court concludes in its

21  independent judgment that the relevant state court decision applied clearly established federal law

22  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

23  federal habeas court making the "unreasonable application" inquiry should ask whether the state

24  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

25      Petitioner has the burden of establishing that the decision of the state court is contrary to or

26  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

27  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

28  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

1   decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.
2   1999).

3        AEDPA requires that we give considerable deference to state court decisions. The state
4   court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's
5   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), cert. denied, 537
6   U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

7   **III.  Review of Petitioner's Claims**

8        **A.  Exhaustion and Procedural Default**

9        Respondent claims that Petitioner failed to exhaust his administrative remedies by appealing
10  the decision of the DRC.  Respondent argues that Petitioner's claims are therefore procedurally
11  defaulted because the California Supreme Court relied on the independent and adequate state ground
12  of failure to exhaust administrative remedies in denying Petitioner' petition for writ of habeas
13  corpus.

14       Petitioner argues that two exceptions to the exhaustion requirement are applicable.  The first
15  is that the Board would have certainly denied any administrative appeal given the no-parole policy
16  and its denial of other similar appeals.  The second is that Petitioner would suffer irreparable harm if
17  relief is delayed awaiting the outcome of an administrative appeal, as Petitioner is already overdue
18  for release.  Petitioner argues that either reason is sufficient to excuse his failure to exhaust.

19       A federal court may address a habeas petition if the last state court to which the petitioner
20  presented his federal claims did not clearly and expressly rely on an independent and adequate state
21  ground in denying the petition.  See Coleman v. Thompson, 501 U.S. 722, 735 (1991).  The
22  California Supreme Court's denial of a habeas petition without comment or citation generally
23  constitutes a decision on the merits of the federal claims, rather than a procedural ruling, where no
24  reasoned opinion from a lower court exists.  See Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir.
25  1992); Harris v. Sup. Ct., 500 F.2d 1124, 1128-29 (9th Cir. 1974)

26       Here, the California Supreme Court's denial was presumably on the merits of Petitioner's
27  federal claims, as it was made without comment or citation.  Further, there are no surrounding
28  circumstances showing that the court relied on an independent and adequate state ground in denying

1  the petition.  See Hunter v. Aispuro, 982 F.2d 344, 347 (9th Cir. 1992) (recognizing that the

2  language used in disposing of the case or the fact that the state only argued a procedural bar may

3  indicate the basis for denial was procedural).  This Court will therefore address the merits of the

4  petition.

5      **B.  Due Process Claims**

6

7          Petitioner argues that his procedural and substantive due process rights were violated when

8  his parole recommendation was disapproved.  Petitioner argues that the reasons given for the

9  disapproval were a sham and that the disapproval was part of a broader, no-parole policy put in place

10 by the Governor.  Petitioner further argues that the Board failed to abide by the mandatory time

11 limits imposed on reviewing parole decisions and that it violated his rights by denying him a

12 sentence in accordance with the matrix of base terms.

13         These claims were presented in a petition for writ of habeas corpus to the California Supreme

14 Court, which summarily denied the petition on December 20, 2000.  (Answer, Ex. 6.)  When the

15 state court reaches a decision on the merits but provides no reasoning to support its conclusion, we

16 independently review the record to determine whether the state court clearly erred in its application

17 of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

18 we independently review the record, we still defer to the state court's ultimate decision.  Id.

19         "We analyze a due process claim in two steps. '[T]he first asks whether there exists a liberty

20 or property interest which has been interfered with by the State; the second examines whether the

21 procedures attendant upon that deprivation were constitutionally sufficient.'"  Sass v. California Bd.

22 of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).  California's parole scheme gives rise to a

23 cognizable liberty interest in release on parole.  Id. at 1127-28.  However, "because parole

24 proceedings are not part of the criminal prosecution, the full panoply of rights due a defendant in a

25 criminal proceeding is not constitutionally mandated.  Instead, the due process rights that flow from

26 a liberty interest in parole are limited: the prisoner must be provided with notice of the hearing, an

27 opportunity to be heard, and if parole is denied, a statement of the reasons for the denial.  In addition,

28 due process requires that 'some evidence' support the parole board's determination, and that the

1    evidence relied upon must possess 'some indicia of reliability.'  The 'some evidence' standard is

2    satisfied if there is any reliable evidence in the record that could support the conclusion reached.

3    Finally, determining whether the 'some evidence' standard was met does not require examination of

4    the entire record, independent assessment of the credibility of witnesses, or the weighing of

5    evidence." Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1079-80 (C.D. Cal. 2006) (citations

6    omitted).

7           The state court did not clearly err in its application of Supreme Court law when it determined

8    that Petitioner's due process rights were not violated when the DRC disapproved his parole

9    recommendation.  Petitioner was provided a parole hearing in which he and his counsel took part.

10   (Answer, Ex. 2 at 1-2.)  He was provided with the written opinion of the DRC disapproving the

11   recommendation of his parole and an opportunity to appeal the decision.  (Answer, Ex. 3.)  The DRC

12   also set forth the factual basis supporting its decision to disapprove Petitioner's parole.

13          The first reason given by the DRC was the callous nature of the commitment offense and the

14   insignificant motive for the crime.  Petitioner, after two days of drinking alcohol, went to a nightclub

15   and got into an altercation with the victim when they bumped into each other while dancing.

16   (Answer, Ex. 2 at 5-6, 29-30.)  Petitioner then stabbed the unarmed victim 4-5 times, continuing to

17   stab him as the victim tried to pull away.  (Answer, Ex. 2 at 6; Ex. 3.)  Petitioner then fled the scene,

18   tried to dispose of the evidence, and went to another bar where he continued consuming alcohol.

19   (Answer, Ex. 2 at 7; Ex. 3.)  Petitioner did not confess to the crime when he returned to the scene

20   and was advised by the police that the club was closed because of the incident.  (Answer, Ex. 2 at 8;

21   Ex. 3.)  These facts were sufficient to establish one circumstance of Petitioner's unsuitability for

22   parole, as they show that Petitioner committed the offense in an especially heinous, atrocious, or

23   cruel manner, as defined in the parole guidelines.  See Cal. Code Regs., tit. 15, § 2402(c)(1) (2008)

24   (stating that factors to be considered in determining whether offense was especially heinous,

25   atrocious, or cruel include committing an offense in a manner demonstrating exceptionally callous

26   disregard for human suffering or with a motive that is very trivial in relation to the offense).

27          The DRC also cited, among other things, 1) the fact that alcohol played a significant role in

28   Petitioner's crime and that one of his psychological reports noted that Petitioner's potential for

1    violence was low if he remained sober; and 2) the opposition from the San Diego District Attorney

2    and National City Police Department based on Petitioner continuing to claim that he was a victim

3    and continuing to minimize his role in the crime by claiming that a friend told him to carry the knife

4    and leave the club after the stabbing.  (Answer, Ex. 2 at 7, 16, 27, 31; Ex. 3; Ex. 5, Attachments A-

5    C.)  These facts were properly considered and had some indicia of reliability.  See Cal. Penal Code §

6    3046(c) (stating that the Board, when considering the parole of a prisoner serving a life term, shall

7    consider statements and recommendations made by interested persons such as the district attorney

8    and sheriff); Cal. Code Regs., tit. 15, § 2402(b) (2008) ("All relevant, reliable information available

9    to the panel shall be considered in determining suitability for parole.").

10        The evidence taken as a whole, and giving deference to the state court's ultimate decision, is

11   sufficient to show that there was  "some evidence" supporting the DRC's determination.  Cal. Code

12   Regs., tit. 15, § 2402(b) (2008) ("Circumstances which taken alone may not firmly establish

13   unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."); see

14   Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (finding "some

15   evidence" standard satisfied based on gravity of convicted offenses in combination with previous

16   offenses); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005).

17        Petitioner further argues, however, that his due process rights were violated based on 1) the

18   Governor's no-parole policy; 2) the DRC's failure to review his parole recommendation in a timely

19   manner; and 3) the fact that he has been subjected to a prison term beyond the term identified in the

20   matrix of base terms.  These claims each lack merit.  Petitioner has failed to present sufficient

21   evidence to demonstrate that a no-parole policy was in place or that any such policy affected the

22   Board's disapproval of his parole.  See Thompkins v. Kane, 2008 WL 2128226, *6 (N.D. Cal. 2008)

23   (denying habeas relief on claim of anti-parole policy based on insufficient evidence).  Similarly,

24   Petitioner's rights were not violated when the DRC failed to complete review of his parole

25   recommendation within 60 or 90 days, as the regulations in force at the time stated that parole

26   recommendations did not become effective until review by the DRC was complete.  See Cal. Code

27   Regs., tit. 15, § 2043 (1999) ("Any proposed decision granting, modifying or denying a parole date

28

1  for a life prisoner, whose commitment offense occurred after July 1, 1977, exclusive of those made

2  during Progress Hearings, shall be effective 90 days after the hearing at which the proposed decision

3  was made, unless the proposed decision states a later effective date, and provided, however, no

4  decision is effective until reviewed by the decision review unit.").  Further, Petitioner's due process

5  rights were not violated by subjecting him to a sentence longer than the term identified in the matrix

6  of base terms, as the regulations did not entitle him to a parole date based solely on the matrix.  See

7  Cal. Code Regs., tit. 15, § 2402(a) (1999) ("Regardless of the length of time served, a life prisoner

8  shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

9  an unreasonable risk of danger to society if released from prison.").

10       **C.  Ex Post Facto Claim**

11       Petitioner argues that the constitutional amendment and implementing legislation granting

12  the Governor the ability to review parole decisions offend the ex post facto clause.  (Cal. Const., art.

13  V, section 8(b); Cal. Penal Code § 3041.2.)  The Court cannot review this claim, however, as

14  Petitioner concedes that the Governor never exercised the authority to review a decision relating to

15  his parole.  Traverse at 37-38; see Thomas v. Anchorage Equal Rights Com'n, 220 F.3d 1134, 1139

16  (9th Cir.2000) ("[T]he Constitution mandates that prior to our exercise of jurisdiction there exist a

17  constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not

18  hypothetical or abstract.'").

19            **RECOMMENDATION**

20       Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

21  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

22  Respondent.

23       This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

24  United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

25  72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

26  California.  Within thirty (30) days after being served with a copy, any party may file written

27  objections with the court and serve a copy on all parties.  Such a document should be captioned

28  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall

1  be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

2  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

3  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

4  waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  IT IS SO ORDERED.

6  **Dated:   June 19, 2008**                        **/s/ John M. Dixon**
                                            UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28